Good morning. Faye Arf on behalf of Craig Williams. The Court wanted to know whether the admission of the gang evidence and gang expert testimony deprived Mr. Williams of due process and a fair trial. We can't hear very well. Oh. The Court wanted to know if the admission of the gang evidence deprived Mr. Williams of due process and a fair trial, and the answer is clearly yes. And the way we find that is because if we extract all that evidence, take out all the gang evidence, all you really have is a shaky identity. Excuse me. What did you mean by the Court wanted to know? I'm sorry? What did you mean by the Court wanted to know? Oh, I'm sorry. In the certificate of appealability. Oh, I'm sorry. And the test is if you remove all of that evidence, what do you really have left? You have a shaky identification by his wife, Monique, the victim's wife, Monique, who really couldn't have seen anything in the night when she was with the kids. It happened very fast. And then you have the victim himself who was shot several times in the back. We don't know whether he even saw the person, but we have what the trial court found to be a spontaneous statement in response to Monique's questions. That's really all you had. You added the gang evidence. First of all, we don't even have proof that Mr. Williams was a gang member except for the fact that he had a prior narcotics sale. Because of that, again, highly inflammatory evidence was brought in that he sold narcotics, that the gangs controlled narcotics in the area, and that therefore he was a gang member. And anyway, it's speculation upon speculation, the whole motive, everything about this gang evidence. There's no showing that the shooting was gang-related. Mr. Williams himself testified, got up and testified. He said that a lot of people on the street have gotten shot there. Blacks, Mexicans, everything has got shot. Can I ask a question for a minute? Yes. Is this case covered by EDPA? A-E-D-P-A-E? Yes. It is. So it would be helpful if you would address how the EDPA standards apply here. Well, because there's a due process question, which I addressed in my reply brief. Clearly, under two reasons, under the Breck v. Abramson standard, where we have the error had a substantial or injurious effect. We have to find that this was an unreasonable application of clearly established Supreme Court law, right? Yes. What's the clearly established Supreme Court law? Yes. What is the clearly established Supreme Court law? Clearly established Supreme Court law is that, well, I found some.  Well, I do believe that I supplied that in my opening brief. Clearly established Supreme Court law guarantees a criminal defendant the right to due process. That's on page 20 of my opening brief. That's pretty general. Doesn't it have to be more specific than that? In other words, doesn't there have to be some Supreme Court precedent that's either been contradicted or unreasonably applied by the state court? Well, due process. We have Spencer v. Texas. I think fundamental fairness is something that the Supreme Court has long upheld, fundamental fairness in a trial. And certainly we have Payne v. Tennessee, where evidence at trial violates due process when it is so unduly prejudicial that the trial is fundamentally unfair. So I think that all of these, the fundamental concept of due process has to do with all of this. And so that's what brings us under Adipa. And in fact, I think the Ninth Circuit has some cases, too. Mitchell v. Prenti. This is all on page 21 and 22 of my brief, built by association. So I think in terms of Adipa, I think this case does fall within Adipa, that it was unreasonable for the state court to admit the evidence based on due process principles, which is a fair thing that the Supreme Court, I believe, upholds. I will reserve time for rebuttal, unless the Court has any additional questions. Thank you. Thank you. Good morning, Your Honors. Deputy Attorney General Erica Jackson on behalf of Respondent. As the Court has indicated, the proper standard in this case is whether the U.S. Supreme Court, any U.S. Supreme Court case has been applied contrary, contrarily or is unreasonably applied in this case. And as we put it out in our brief, there is no U.S. Supreme Court authority that compels federal habeas relief in this case. There is no case decided by a petitioner in which the Court has held that this type of trial should be fundamentally unfair, that it violates due process. Can I just say, one part of the testimony that troubled me was the very act where essentially in material it just seems totally irrelevant to the case. He basically says that these people, that the gangs are, the more violent crimes they commit, the more they're feared, the more they're feared, the more crimes they commit. And he says, yes, that's right. And essentially that they're members of the community fears how to be able to make gangs within the community, frightening the community at large. And apparently they frighten the jury this way because they seemed nervous about how they were going to get to their cars after the trial. So isn't this entirely inflammatory and quite irrelevant? No, it's not. This is the exact evidence that the Ninth Circuit has itself held. I haven't seen this specific thing. I mean, in other words, I understand all the rest of it, you know, which I do find troublesome, but it seems to be fairly routine about what gangs do and so on. But the notion that they're going to frighten the community, what does that have to do with the trial? And isn't it – I mean, there is a basic ground-level rule that you can't have evidence admit that's so fundamentally unfair that it prejudices the defendant. There's at least that rule, right? Yes. A Supreme Court rule. Yes. And this seems really quite far afield because apparently it's threatening the jury, really. You're referring to the jury's request to have it – Well, at the end, but I'm saying this – only as proof that the fact that it had that effect. But the statement here, the questions were not just how it was affecting the gangs vis-a-vis each other, but that they were going to frighten the community at large. What does that have to do with anything? I think that goes to the motive, which was the prosecution's theory of the case as to why someone who apparently had no connection to and no reason to confront somebody who had just driven into the neighborhood to check on car parts or – Is that legitimate expert testimony? I mean, people – one knows that gang members are out to often scare people, but what's an expert doing, testifying to this? Well, because this is outside the normal experience of most people. Most people don't understand or have any connection to gangs, and so that's why the expert under California law is permitted to come to court and testify regarding the nature of the gangs. You don't think that most people think that gangs are – know that gangs are out to scare people? I don't know that that's a true assumption. I think that there are people – and because of this area, not everyone has a connection to gangs, and that's why it's relevant and why the prosecution is allowed to put on this kind of evidence, because not everyone can understand why this would matter to a gang member, how this helps them, why shooting a person, an unknown person who's done nothing to provoke them, nothing is – no evidence of any prior altercation, no evidence that there – any reason at all why the petitioner in this case would have shot this man in cold blood. So that's why this kind of evidence is often admitted and relevant and necessary for a this happened, and that would – it's a relevant fact in this case, and it helps prove his identity and why this was done. Do you need anything to introduce that kind of evidence? Could you just say, here's a member of the other gang, and here's why he would have had a motive to do it? I'm not sure I understand your question. What's the minimum of testimony that he did it before you can introduce this kind of testimony? Is there any? I'm not sure what the minimum is. I think in a case where the prosecution may have a situation where it doesn't make any sense for this to occur, and there is evidence that there may be, again, a tie to what occurred. In this case, because of the circumstances of what happened, and the detectives – because I believe the victim's wife was able to get to the police right away, and the investigating officer knew from the circumstances that it might be gang-related. So I think it depends on the circumstances. In this case, because there was the location, because of the ongoing gang war, there was a reason to believe that that might be relevant, and that's why the prosecution was allowed to go into that to show the motive behind the crime. Did he see the shooter? Did he, the investigating officer? The victim. The victim? Yes, he did. He did see the – he told his wife, as he was dying, that Craig had shot him. Well, your opposing counsel said he was shot in the back and he didn't see the shooter. That's not true. He was approaching the vehicle, and the car was in front of him, and when he approached him, he was in front of him. So he ran after he saw the gun, but he saw him first. Thank you. Anything else? No, unless there are any further questions, I'm prepared to submit. Thank you. Thank you. Just in rebuttal with regard to the Adipa question, it seems that due process would be a fundamental area that would be based in Supreme Court law. Where else would a defendant go when he says, look, I didn't have a fair trial? Well, I wouldn't recommend the Supreme Court. Okay. That's why we're here. When people want due process, when there's something fundamentally unfair that happened to them, where evidence comes in like this, this was not a gang case. There were no gang slogans. There was nothing to bring this in the area of the gangs, the realm of the gangs, except you had an investigating officer who happened to testify as a gang expert. And then based on his theory of the case, he was able to tell the jury that basically Mr. Williams shot Bruce Battle because of things that happened years ago by other people in the gang who shot, you know, relatives, which really had nothing to do with the particular shooting involved. That's the question, not the answer, right? His testimony was essentially it did have something to do with it. Yeah, it had something to do with it, but there was really no showing that Bruce Battle really had anything to do with the gangs anymore, the victim. He was just there with his wife and four kids just buying some chicken or going out to dinner, but he came for car parts. It had nothing to do with the gangs. In fact, my understanding was that he had left Compton. He didn't even live in the area anymore. So for the investigating officer who, again, deals with gangs immediately, of course, thought this was a gang case and then tried to put his case together with a theory that because somehow my client, Mr. Williams, lived on White Street, which was a half a block away and was in a gang, that somehow he must have been involved. And then to get that person as an expert to testify that it happened for gang reasons, lacked any basis at all and allowed the investigating officer, again, to put his theory of the case in front of the jury. And it really did carry a lot of weight because, again, the juries were even afraid to walk to their cars after this. You said there's no evidence that the victim was a member of the gang? The evidence came through Detective Brennan. And he purported to have known this guy for a long time and to have been told by him that he was a member of the gang several times? Yes. I believe, yes. I believe, and that's the best of my recollection, is that I believe that it was brought in through the Detective Brennan, the so-called expert, the investigating officer. And it's always troubling when you have the investigating officer testifying as an expert because he essentially gets to say what he thinks happened. And that's exactly what happened in this case without any supporting evidence whatsoever. So based on that, unless the court has any additional questions. Testifying that the victim was a member of the gang really doesn't depend on being an expert in gangs. It depends on what his knowledge is of the neighborhood and which people are involved in this. It's not quite expertise. It's just direct knowledge from being an officer who deals with gangs. Well, but I believe he did it under the guise of being an expert. Well, he testified to some degree as an expert and to some degree as a direct witness. Yes. That's okay, isn't it? I would take out the expert part and then I'd feel better. And then, again, how does he really know? We don't really know how Mr. Well, he says he knows because he was told. Okay, well, then again. By him, by your client. That Bruce Battle was an OG? No, that he says, I don't remember how he said he knew that, but he did say he knew it. Yeah, well, again, we need to know the basis of how he knew. But I thought he did know.  I believe it was the detective and he said that Bruce Battle was an OG. Because? He just knew. He knew the neighborhood. He knows everybody. He's blondie. He knows the neighborhood. He knows my client. So this is how we put it all together. So it really isn't clear whether or not Bruce Battle is a gang member, whether my client's a gang member. There are no indicia. We know how he knew your client was a gang member. He said he told me so. Is that not true? I'm not sure there was an admission in this particular case. Yeah, you don't seem to know the record at all. I'm sorry. Actually, I've been with this case for a long time. But that particular issue, I believe it didn't come from my client. My client denied he was a gang member. But I believe that the only way that Bruce Battle became a gang member was through the detective. There's never any indicia. We found no gang symbols, no nothing, no tattoos, no slogans, nothing to link any of them. So the only evidence that it could have been was through the expert, the investigating officer. He's the only one that testified about all the gang memberships. My client denied being a gang member. So if there was an admission, we don't know when it was. The only admission there was was at apparently a funeral when my client allegedly said something to John. I'm not recording any questions. Anything further? Thank you. Okay. Thank you. The case, Judge Jargon, will be submitted.
judges: Kennelly, Reinhardt, Berzon